# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

KATINA VON NEWMAN,

       **Plaintiff,**

v.                                                                                        Civil Action No. 3:19-cv-00075

MARSHALL UNIVERSITY POLICE
DEPARTMENT, THE CITY OF HUNTINGTON,
AND THE HUNTINGTON POLICE DEPARTMENT,

       **Defendants.**

## ORDER

       On August 20, 2019, pursuant to this Court's ***Order*** entered on August 16, 2019 (ECF No. 60), the undersigned conducted a hearing with regard to the contradictions between the allegations of the parties with respect to whether emergency lights were activated to trigger the automatic video recorder from a Huntington Police Department's cruiser during an encounter between Plaintiff and Defendants on or about December 4, 2016. (See, e.g. ECF Nos. 54, 59) Just prior to the hearing, Defendants, The City of Huntington and the Huntington Police Department, filed their ***Supplemental Notice Regarding Video Footage and Body Camera Footage*** (ECF No. 61) along with an Affidavit from Lt. Larry Zimmerman of the Huntington Police Department (ECF No. 61-1) wherein Defendants assert that during the August 19, 2019 deposition of Plaintiff, she provided a recording of video footage from the Marathon Station located at the corner of 10th Street and 9th Avenue that showed that the emergency lights were in fact activated. In his Affidavit, Lt. Zimmerman explained that from his personal knowledge and from dealing with the Huntington Police Department Information Technology that, at the time of Plaintiff's arrest, unless a car

1

camera video is flagged due to an ongoing investigation or an allegation by someone with respect to the recorded incident, the video looped approximately every 10 days and recorded over previous videos.[1] By Plaintiff's own testimony, the earliest complaint she made concerning Defendant Huntington Police Department was on March 13, 2017, approximately 99 days after the alleged incident. Lt. Zimmerman affirmed that Defendant Huntington Police Department has no video of the alleged incident in question.[2]

At the beginning of the hearing, the Court informed the parties that the Court construes Plaintiff's "Response" (ECF No. 59) as a ***Motion to Compel*** due to the contradiction as to whether the emergency lights were activated. The Court further advised Defendants that it was disturbed by these pleadings because having presided over other unrelated cases involving the City of Huntington and Huntington Police Department as defendants, car video recordings had been triggered without emergency lights being activated, and such recordings have been made available well over two years, and sometimes four years, after an alleged incident. The Court announced that it had grave concerns over this misrepresentation by the Defendants' in their pleadings.[3]

As a result of the deposition, counsel for Defendants advised the Court that Plaintiff provided approximately 200 pages worth of discovery, including the video footage from Marathon

---

[1] It was represented by Counsel that the Huntington Police Department is now able to preserve videos in perpetuity. When did the capability to preserve videos in perpetuity begin?

[2] The City of Huntington and the Huntington Police Department argued that they would have preserved the video if they had been made aware of the allegations within the 10 days of the incident. Furthermore, they suggested that since the Plaintiff admitted during her deposition that she had not contacted the Huntington Police Department for over 99 days that the video in question would have been recorded over. However, it should be noted that during the hearing, to contradict the City and the Police Departments arguments, the Plaintiff informed the Court that she did in fact call the Mayor, the City Manager and the City Attorney for the City of Huntington on the morning after the incident and reported her allegations of misconduct of the officers in question. Plaintiff asserted she would have records from her cell phone that would indicate that those calls were placed.

[3] The Court made clear that the misrepresentations are attributable to the Defendant City of Huntington and the Defendant Huntington Police Department and not to Counsel for those Defendants.

and that they had not sufficient time to review it all at this time. Plaintiff represented to the Court that she did have the video footage available for the Court to review, in accordance with this Court's August 16 ***Order***, however, she was unable to open the document on her computer. Counsel for Defendants the City of Huntington and Huntington Police Department advised the Court that they could provide a copy to Plaintiff as well as to the Court. On August 21, 2019, the Court received a USB ("thumb drive") of the video footage from the Marathon Station that was provided by Plaintiff during her deposition and has reviewed same.

The Court is troubled at best by the pleadings filed by the City of Huntington and Huntington Police Department. There is no question that the ***Notice Regarding Video Footage and Body Camera Footage*** (ECF No. 54) was false. Specifically, these Defendants stated: "Defendants … state that no such footage exists because the automatic triggering of such footage was not initiated because no police cruiser activated its emergency lights." But **only** after the Plaintiff proved that police cruiser lights were in fact activated, then, and **only** then, did these Defendants assert a new reason that no such footage still existed with the new reason being that the footage would have only been preserved for 10 days unless specifically saved. (See ECF No. 61). Why was the 10-day excuse not stated originally in the first notice and why was it falsely represented that emergency lights were not activated? Who made the false representation that was then placed in the notice and submitted to the Court? What actions did the Mayor, City Manager and City Attorney take after having been informed by the Plaintiff of these allegations against the police officers involved in this incident? Did the Mayor, City Manager and/or the City Attorney contact the police department after the Plaintiff's call? If not, why not? If so, then why wasn't the video preserved? These are questions that the Court believes must be answered for the Court to be

able to determine if sanctions are appropriate in this matter for this conduct.

Summarizing the position of these Defendants and based upon the representations made by them, the Court concludes that video footage of the incident existed. However, these Defendants contend that the video was not preserved because the Plaintiff did not contact the police department within 10 days.

As a minimum sanction for the questionable filing filed by the City of Huntington and the Huntington Police Department, the Court believes that counsel should be appointed for the Plaintiff pursuant to 28 U.S.C. 1915(e)(1). Therefore, it is the **ORDER** of the Court that Andrew Byrd, Esq. of the Warner Law Offices, PLLC, 227 Capitol Street, Charleston, WV 25301, is hereby appointed as Counsel for the Plaintiff.[4] Mr. Byrd is **ORDERED** to forthwith file a *Notice of Appearance* with the Clerk of the Court.

As a result of the appointment of Mr. Byrd, the Second Amended Scheduling Order (ECF No. 52) previously entered herein is hereby **VACATED**. The parties are put on notice that Judge Chambers will enter a Scheduling Order and in order to facilitate the parties, the undersign ORDERS that the last day for counsel to meet pursuant Rule 26(f) shall be September 16, 2019 and the last day to file the Report of Parties' Planning Meeting and Scheduling Order Worksheet shall be September 23, 2019. The undersigned is advised that Judge Chambers will enter an Order for a Scheduling Conference if one is determined to be needed.

As a further result of the appointment of Mr. Byrd as counsel for Plaintiff, the undersigned will give the Plaintiff until October 26, 2019 to request any further request for hearing or relief as a result of the court-construed ***Motion to Compel***. If nothing further is filed or requested of the

---

[4] The undersigned contacted Andrew Byrd and requested that he consider an appointment by the Court to represent the plaintiff in this matter; subsequently, Mr. Byrd contacted the Court and stated he would accept the appointment.

Court, or if no request for a hearing is requested regarding this issue, the Court will consider the appointment of Counsel as relief for the court-construed **_Motion to Compel_** and will moot any remaining issues.

The Clerk is hereby directed to mail a copy of this Order to Plaintiff, to Plaintiff's Counsel, Andrew Byrd, Esq., and to all other counsel of record.

ENTER: August 26, 2019.

Omar J. Aboulhosn
United States Magistrate Judge