# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

KATINA VON NEWMAN,

        Plaintiff,

v.                               CIVIL ACTION NO. 3:19-0075

MARSHALL UNIVERSITY POLICE
DEPARTMENT, et al.

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Disqualify Counsel by Defendants the City of Huntington and the Huntington Police Department (HPD) (collectively referred to as the City Defendants). ECF No. 94. For the following reasons, the Court **DENIES** the motion.

The facts related to the City Defendants' motion are straightforward. Plaintiff Katina Von Newman filed this action *pro se* in the Circuit Court of Cabell County, alleging, *inter alia*, that she was sexually assaulted by a HPD police officer. Thereafter, Defendants removed the action to this Court. On August 26, 2019, the Honorable Omar J. Aboulhosn, Magistrate Judge, found that the City Defendants provided false information to the Court and Plaintiff, and he determined their conduct warranted appointing counsel pursuant to 28 U.S.C. § 1915(e)(1).[1] *Von Newman v. City of Huntington*, 3:19-0075, ECF No. 63 at 3-4; *see also Von Newman v. Marshall Univ. Police Dep't,* No. 3:19-CV-00075, 2019 WL 6880479, at *5 (S.D. W. Va. Dec. 17, 2019)

---

[1] Section 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).

(imposing an award of fees and costs as the minimum sanction for submitting a false pleading). Andrew Byrd, of the Warner Law Offices, PLLC, was appointed to represent Plaintiff. *Id*.

On February 21, 2020, the City Defendants moved to disqualify Mr. Byrd and the Warner Law Offices because of a conflict of interest that arose when David L. Shuman, Jr. began working as a lawyer for the Warner Law Offices on or about January 2, 2020.[2] It is uncontested that Mr. Shuman previously worked for the law firm of Offutt Nord, PLLC, and appeared as counsel in this specific case on behalf of the City Defendants on April 2, 2019. According to the City Defendants, Mr. Shuman was intimately involved in their defense. The City Defendants submitted an Affidavit of Megan D. Kibler, Director of Accounting of Offut Nord, in which she states Mr. Shuman "personally billed 43% of the total hours that were billed [in this case] during the time period of his employment at Offutt Nord, PLLC" and 16% of the total cases he worked on involved the City Defendants. *City Defs.' Ex. 2*, Affidavit of Megan D. Kibler, at ¶¶4, 5, ECF No. 106-2.

In opposition to the motion, Plaintiff maintains that Mr. Shuman was hired to oversee the firm's medical malpractice cases and has had no involvement in this matter since he started. Prior to his first day of work, Plaintiff states that the paper case file was placed in a locked filing cabinet, with only Mr. Byrd and his paralegal having access to the key. Additionally, Mr. Shuman was not given access to a computer or the firm's electronic case management system until he permanently was locked from electronically accessing this case. Additionally, Mr. Shuman's

---

[2]Defendants state they learned on February 14, 2020, that Mr. Shuman joined the Warner Law Offices.

office is located in an "annex," which is a separate building and on a different floor than the firm's main office where Mr. Byrd is located. Given these measures, Plaintiff argues adequate safeguards were implemented to ensure information related to this case was safeguarded from Mr. Shuman.

The City Defendants argue, however, these measures do not alleviate the fact that Mr. Shuman had access and was intimately involved with the City Defendants' case file. The City Defendants insist his unfettered access to their files unquestionably gives rise to an appearance of impropriety that disqualifies the Warner Law Offices and Mr. Byrd. Upon review, the Court disagrees.

To resolve the issue, this Court first looks to the rules governing disqualification of counsel. Rule 83.7 of the Local Federal Rules of Civil Procedure provides that all attorneys who practice before this Court must adhere to the Rules of Professional Conduct, as adopted by the Supreme Court of Appeals of West Virginia, and the Model Rules of Professional Conduct published by the American Bar Association (the ABA Model Rules).[3] A lawyer whose continued representation will violate these rules must withdraw as counsel. *See* W. Va. R. Prof'l Conduct 1.16(a)(1) (providing, in part: "(a) . . . where representation has commenced, [a lawyer] shall

---

[3]Local Federal Rule 83.7 states:

> In all appearances, actions and proceedings within the jurisdiction of this court, attorneys shall conduct themselves in accordance with the Rules of Professional Conduct and the Standards of Professional Conduct promulgated and adopted by the Supreme Court of Appeals of West Virginia, and the Model Rules of Professional Conduct published by the American Bar Association.

Local Fed. R. Civ. P. 83.7.

withdraw from the representation of a client if: (1) the representation will result in violation of the Rules of Professional Conduct or other law"); ABA Model Rule 1.16(a)(1) (same). Here, the City Defendants contend that the Warner Law Offices and Mr. Byrd are disqualified under Rules 1.9(a) and 1.10 of the West Virginia Rules of Professional Conduct because of Mr. Shuman's employment.

Rule 1.9(a) of the West Virginia Rules of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." W. Va. R. Prof'l Conduct 1.9(a); ABA Model Rule 1.9(a) (same). The principles underlying this Rule arise from the duty of fidelity and loyalty a lawyer owes his or her former clients and the requirement that a lawyer maintain the attorney-client privilege and not disclose or adversely use confidential information. *State ex rel. McClanahan v. Hamilton*, 430 S.E.2d 569, 572 (W. Va. 1993). West Virginia's Rule 1.9's mandate is extended to law firms by Rule 1.10(a) which further provides:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7[4] or 1.9, unless the prohibition is based on a personal interest of the disqualified lawyer

---

[4] Rule 1.7 involves concurrent conflicts of interest.

and does not present a significant risk of materially limiting the
representation of the client by the remaining lawyers in the firm.

W. Va. R. Prof'l Conduct 1.10(a) (footnote added).[5] In deciding whether a prohibited conflict of interest exists, the Court "is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety,' it is to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir. 1977) (citations omitted).

In 2015, the West Virginia Rules were amended. As part of those amendments, Comment 4 of the Model Rules was added to West Virginia Rule 1.9. This Comment explains that, when a lawyer ends his or her association with a firm, the issue of whether a lawyer should represent a client becomes more complicated. When confronted with such a situation, there are competing factors to consider.

> First, the client previously represented by the former firm must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association.

*Id.*, Comment 4, in part; *see also* ABA Model Rule 1.9, Comment 4. Significantly, the commentators acknowledged that many lawyers change law firms throughout their careers and limit their work in those firms to a particular practice area. *Id*. As such, it was recognized that, "[i]f the concept of imputation were applied with unqualified rigor, the result would be radical

---

[5]As shall be discussed *infra*, ABA Model Rule 1.10 differs significantly from the West Virginia Rule 1.10.

curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel." *Id*.

The City Defendants acknowledge that Comment 4 calls for the Court to strike a balance between (1) their right to loyalty and their right to keep their confidence protected; (2) Plaintiff's prerogative to choose her counsel; and (3) the ability of lawyers to switch law firms and gain new clients. However, the City Defendants assert that, as applied to this case, this balance weighs significantly in favor of disqualification.

Specifically, the City Defendants assert Mr. Shuman actively represented them in this precise matter by directly interviewing city employees, drafting many of the Court filings, appearing at hearings, and having access to sensitive and privileged communications. Thus, there can be no doubt the City Defendants have a strong interest in ensuring counsel is both loyal and protective of the information gained through his representation, and the City Defendants are unwilling to waive these safeguards. *See* W. Va. R. Prof'l Conduct 1.9(a) (stating that a former client may give a written waiver); ABA Model Rule 1.9(a) (same). As to this factor, the Court agrees with the City Defendants.

Turning to the second factor, the City Defendants insist this factor too weighs in its favor because counsel in this case was not chosen by Plaintiff; rather, he was appointed by the Court. Although the City Defendants' argument is factually accurate, the Court finds its application is an oversimplification of the attorney-client relationship. It is true that Mr. Byrd was appointed by the Court. However, it also is true that the ongoing relationship between Plaintiff and her counsel

is based upon Plaintiff's choice to maintain that relationship. It is that ongoing choice by Plaintiff the Court also must consider as part of its decision-making process. In this regard, the Court finds the second factor weighs in favor of Plaintiff, not the City Defendants.

Lastly, the City Defendants argue that Mr. Byrd's and the Warner Law Offices' disqualification in this matter in no way unreasonably hampers their, or Mr. Shuman's, ability to form new associations or obtain new clients. However, the Court again does not completely agree with the City Defendants. As applied to the particular facts of this case, the ability to obtain new clients is not directly at issue because Plaintiff already was a client of Mr. Byrd and the Warner Law Offices when Mr. Shuman changed firms.[6] Nevertheless, if Mr. Shuman's employment results in Mr. Byrd's and the Warner Law Offices' disqualification, it does have a chilling effect on lawyers forming new associations, even though Mr. Shuman has limited his work at the Warner Law Offices to medical malpractice cases, as contemplated by Comment 4 of both the West Virginia and Model Rules. Thus, considering all three factors, the Court finds the balance weighs slightly in favor of Plaintiff, rather than the City Defendants.

In her Response, Plaintiff also argues her counsel and the Warner Law Offices should not be disqualified because they established an adequate protective screen, sometimes referred to as a "Chinese wall," to keep Mr. Shuman from having access to this action or being involved with it. *See HealthNet, Inc. v. Health Net, Inc.*, 289 F.Supp.2d 755, 761 (S.D. W. Va. 2003) ("Law firm screens, sometimes known as 'Chinese walls,' are supposed to keep a conflicted

---

[6]Although not at issue here, it certainly is conceivable that disqualification could impact their ability to attract new clients with potential conflicts.

lawyer from discussing the matter with firm personnel, from having access to files concerning the matter, and from sharing fees derived from the matter."). Although Plaintiff states she was unable to find a case decided by either the Fourth Circuit or the West Virginia Supreme Court regarding the adequacy of establishing a screen under the facts presented in this case, Plaintiff cites *Burgess-Lester v. Ford Motor Co.*, 643 F. Supp.2d 811, 816 (S.D. W. Va. Oct. 17, 2008), adopting a three-part test set forth by the Seventh Circuit in *Schiessle v. Stephens*, 717 F.2d. 417 (7th Cir. 1983). In *Schiessle*, the Seventh Circuit Court stated:

> First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make disqualification proper.

717 F.2d at 420 (citation and footnote omitted).

Applying this test, Plaintiff does not challenge either that a substantial relationship exists with Mr. Shuman's prior representation of the City Defendants or that Mr. Shuman was privy to confidential information by virtue of his previous employment. However, Plaintiff contends that the City Defendants' argument fails under the third factor. With respect to this factor, the *Schiessle* court explained that a party may rebut a presumption of shared confidences by implementing a screen that prevents confidential information from flowing "from the 'infected' attorney to any other member of his present firm." 717 F.2d at 421 (citation omitted). Whether a screen is sufficient must be decided on a case-by-case basis founded on objective, verifiable evidence. *Id*. Evidence a court may consider may include, but is not limited to, a law firm's size

and how it is structurally divided, the likelihood the "infected" lawyer will have contact with the specific lawyers handling the conflicted matter, "the existence of rules which prevent the 'infected' attorney from access to relevant files or other information pertaining to the present litigation or which prevent him from sharing in the fees derived from such litigation." *Id*. (citation omitted). Here, Plaintiff contends that the screening procedure put in place sufficiently rebuts the presumption of shared confidences.

Upon review, the Court agrees with Plaintiff. Here, prior to Mr. Shuman beginning his employment with the Warner Law Offices, the paper case file was locked away preventing him or his paralegal from gaining access to it. He also was not given access to a computer or the firm's electronic case management system until after access to this case was blocked. Additionally, Mr. Shuman has limited his work at the firm to medical malpractice, and his office is physically located in an "annex," which is a separate building and on a different floor than the firm's main office where Mr. Byrd and his paralegal are located. Plaintiff asserts that the involved counsel and paralegals all understand the reasoning behind these safeguards, and there has been no communications between counsel regarding this case since Mr. Shuman began his employment.[7] Given these measures, Plaintiff argues adequate safeguards were implemented to ensure information related to this case was protected from Mr. Shuman.

---

[7]As indicated by the City Defendants, there obviously was communication prior to Mr. Shuman's employment with the Warner Law Offices because Mr. Shuman and Mr. Byrd were on opposing sides of this litigation.

Upon consideration, the Court finds these steps weigh in Plaintiff's favor. Unlike *HealthNet, Inc.* in which the screening was not done until five months after the conflict arose, Mr. Byrd and the Warner Law Offices took the necessary screening measures both before and at the time Mr. Shuman started work. *See HealthNet, Inc.*, 289 F. Supp.2d at 762 (recognizing that "[m]ost jurisdictions that approve of the screening of private lawyers, such as the Seventh Circuit, require that the screening take place at the time of the lawyer's hiring or as soon as the disqualifying event occurs").[8] Based upon the safeguards taken, assurances that counsel have acted consistent with the underlying reasons for those safeguards, Mr. Byrd's representation that he and Mr. Shuman have had no communication about this case since Mr. Shuman started with the firm, and the fact Mr. Shuman's practice is limited to medical malpractice cases, the Court is confident that information has not been shared and *both* Plaintiff and the City Defendants' files are adequately protected. Thus, under the specific facts of this case, the Court finds the measures taken are sufficient to alleviate the appearance of impropriety and warrant denial of the City Defendants' motion. In making this decision, the Court also is mindful of the unusual nature of this case in that Plaintiff's counsel was appointed by the Magistrate Judge when the City Defendants provided false information to the Court and Plaintiff. Given the Court's finding that the weight of the evidence demonstrates confidentiality has been—and will continue to be—maintained, it would be particularly harsh to return Plaintiff back to her *pro se* status or force her to obtain new counsel. Therefore, the Court finds this factor also supports denial of the motion.

---

[8] *HealthNet, Inc.* also was decided before Comment 4 was added to the West Virginia Rules in 2015.

Additionally, the Court notes that, despite the fact West Virginia has not adopted Model Rule 1.10(a)(2), this Court still must consider it pursuant to our Local Rule 83.7. Specifically, Model Rule 1.10(a)(2) provides that a lawyer and an associated law firm shall not

> knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless
>
> \* \* \*
>
> (2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and
>
> > (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;
> >
> > (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and
> >
> > (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

ABA Model Rule 1.10(a)(2). Here, the Court finds Mr. Shuman was timely screened under subsection (i), but Plaintiff has not directly addressed the fee issue. Therefore, the Court **ORDERS** Plaintiff to verify **on or before April 24, 2020**, that Mr. Shuman is not receiving any profit or fee from this action. In addition, upon request of the City Defendants or upon termination of the

screening procedure, Plaintiff must provide the certifications of compliance as contemplated by subsection (iii).[9]

Accordingly, having found the balance in this case weighs in Plaintiff's favor for the reasons stated above, the Court **DENIES** the City Defendants' Motion to Disqualify (ECF No. 94), but **ORDERS** Plaintiff to verify **on or before April 24, 2020**, that Mr. Shuman will not profit or take any fee that may be obtained in this matter.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:    April 14, 2020

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE

---

[9] The Court finds this action essentially has mooted the necessity for additional compliance with subsection (ii).